## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF OREGON
### PORTLAND DIVISION

| | |
|---|---|
| **EDDIE LEE KEOKI PHILLIPS,**<br>Plaintiff,<br><br>v.<br><br>**CITY OF ST. HELENS, an Oregon municipal corporation; SGT. JOSE CASTILLEJA, individually and in his official capacity; OFFICER ADAM HARTLESS, individually and in his official capacity; OFFICER MASSEY, individually and in his official capacity; OFFICER SPRATZLE/SPRINKLE (first name unknown), individually and in his official capacity; and JOHN AND JANE DOES 1-10,**<br><br>Defendants. | Case No.: **3:26-CV-963-YY**<br><br>**CIVIL COMPLAINT FOR DAMAGES**<br><br>(1) Violation of 42 U.S.C. § 1983 — Unlawful Entry (4th Amendment)<br>(2) Violation of 42 U.S.C. § 1983 — Unlawful Seizure (4th Amendment)<br>(3) Violation of 42 U.S.C. § 1983 — Excessive Force (4th Amendment)<br>(4) Violation of 42 U.S.C. § 1983 — False Arrest (4th Amendment)<br>(5) Violation of 42 U.S.C. § 1983 — Malicious Prosecution (4th/14th Amendment)<br>(6) Violation of 42 U.S.C. § 1983 — First Amendment Retaliation<br>(7) Violation of 42 U.S.C. § 1983 — Retaliatory Arrest / Pattern of Retaliation<br>(8) Monell Municipal Liability — Policy, Practice, and Failure to Train<br>(9) Violation of Title II, ADA — Disability Discrimination<br>(10) Conspiracy Under 42 U.S.C. § 1985<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

This is a civil rights action brought pursuant to 42 U.S.C. §§ 1983 and 1985, the Fourth Amendment, the First Amendment, and the Fourteenth Amendment to the United States Constitution, as well as Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132. Plaintiff Eddie Lee Keoki Phillips, a decorated combat veteran of approximately twenty years of military service who suffers from service-connected severe Post-Traumatic Stress Disorder (PTSD), brings this action against Defendants for two separate incidents of unconstitutional policing perpetrated by officers of the St. Helens Police Department.

In the first incident, on October 13, 2025, Defendant officers unlawfully entered the curtilage of a private residence without a warrant, without consent, and without exigent circumstances; unlawfully seized Plaintiff without reasonable articulable suspicion; subjected Plaintiff to excessive and unreasonable force, including a joint manipulation hold designed to break Plaintiff's arm and a multi-officer takedown onto a wooden deck; falsely arrested Plaintiff; and confiscated Plaintiff's lawfully carried firearm — all while Plaintiff was peacefully in the backyard of a friend's home. The criminal charges arising from this incident were subsequently dismissed.

In the second incident, on April 2, 2026, Defendant officers — acting in retaliation for Plaintiff's assertion of his constitutional rights and his active Pro Se litigation arising from the October 2025 incident — returned to confront Plaintiff inside a Walmart store in St. Helens, Oregon. During this encounter, an officer grabbed Plaintiff from behind without announcement, pointed a Taser weapon directly at Plaintiff's face without provocation, threatened deployment of a K9 on a non-threatening, non-fleeing individual, and again arrested Plaintiff without probable cause. No criminal charges were ever formally filed arising from the April 2, 2026 arrest. The arresting officer explicitly stated, during transport to jail, that his use of escalated force was justified by reference to the October 13, 2025 incident — a direct, on-the-record admission of retaliatory conduct.

Plaintiff seeks compensatory damages, punitive damages against the individual Defendants, injunctive relief, and attorney's fees pursuant to 42 U.S.C. § 1988.

## I. JURISDICTION AND VENUE

1. This Court has federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 over Plaintiff's claims arising under 42 U.S.C. §§ 1983 and 1985, the First, Fourth, and

Fourteenth Amendments to the United States Constitution, and Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132.

2. Venue is proper in the United States District Court for the District of Oregon, Portland Division, pursuant to 28 U.S.C. § 1391(b), because all acts and omissions giving rise to Plaintiff's claims occurred within Columbia County, Oregon, which falls within this District.

3. This Court has supplemental jurisdiction over any related state law claims pursuant to 28 U.S.C. § 1367.

## II. PARTIES

4. Plaintiff EDDIE LEE KEOKI PHILLIPS is an individual residing at 4626 NE 118th Ave, Portland, Oregon 97220. Plaintiff is a United States military combat veteran of approximately twenty years of service with a documented, service-connected diagnosis of severe Post-Traumatic Stress Disorder (PTSD) treated through the Department of Veterans Affairs.

5. Defendant CITY OF ST. HELENS is an Oregon municipal corporation and a public body as defined by Oregon law, operating the St. Helens Police Department ("SHPD"). The City of St. Helens is responsible for the policies, practices, customs, training, and supervision of SHPD officers and is sued pursuant to Monell v. Department of Social Services, 436 U.S. 658 (1978).

6. Defendant SGT. JOSE CASTILLEJA (Badge No. 44420) is, and at all relevant times was, a sworn police officer and Sergeant employed by the St. Helens Police Department. He is

sued in both his individual and official capacities. At all relevant times, Defendant Castilleja acted under color of state law.

7. Defendant OFFICER ADAM HARTLESS is, and at all relevant times was, a sworn police officer employed by the St. Helens Police Department. He is sued in both his individual and official capacities. At all relevant times, Defendant Hartless acted under color of state law.

8. Defendant OFFICER MASSEY (first name unknown) is, and at all relevant times was, a sworn police officer employed by the St. Helens Police Department. He is sued in both his individual and official capacities. Plaintiff will amend this Complaint to include Officer Massey's full name upon completion of discovery.

9. Defendant OFFICER SPRATZLE/SPRINKLE (full name unknown) is, and at all relevant times was, a sworn police officer employed by the St. Helens Police Department. He is sued in both his individual and official capacities. Plaintiff will amend this Complaint to include the correct full name of this Defendant upon completion of discovery. This Defendant was the arresting officer in the April 2, 2026 incident and made explicit on-record admissions of retaliatory motivation during transport.

10. Defendants JOHN AND JANE DOES 1-10 are persons whose identities are currently unknown to Plaintiff but who participated in the constitutional violations described herein, including supervisory officials who ratified the conduct of the named Defendants. Plaintiff will amend this Complaint to identify Doe Defendants upon completion of discovery.

## III. FACTUAL ALLEGATIONS

### A. Background: Plaintiff's Military Service and Disability

11. Plaintiff Eddie Phillips is a combat veteran who served in the United States military for approximately twenty years, including deployments to major combat zones including Afghanistan and Iraq.

12. As a direct result of his military service, Plaintiff has been diagnosed with severe Post-Traumatic Stress Disorder (PTSD) and receives ongoing treatment through the Department of Veterans Affairs. This diagnosis is documented in Plaintiff's VA medical records.

13. Plaintiff's PTSD constitutes a disability within the meaning of the Americans with Disabilities Act, 42 U.S.C. § 12102. Among the triggers and symptoms of Plaintiff's PTSD are sudden physical contact without warning, restraint, physical altercations, and situations involving threats of imminent harm — all of which were deliberately or negligently induced by Defendants' conduct in both incidents described herein.

## B. Incident One — October 13, 2025: Unlawful Entry, Seizure, Excessive Force. and False Arrest

14. On October 13, 2025, at approximately 10:16 a.m., Plaintiff was present as a lawful guest in the backyard of a private residence located at 365 Park Way Street, St. Helens, Oregon. Plaintiff was engaged in peaceful conversation with the property owner.

15. Officers of the St. Helens Police Department, including Defendants Castilleja, Hartless, and Massey, were dispatched in response to a 911 call reporting an alleged disturbance at 384 Park Way Street — a different address than the one Plaintiff was located at. The caller was later identified as a twelve-year-old juvenile. By the time officers arrived, the caller reported she could no longer see any incident occurring.

16. The backyard of 365 Park Way Street is enclosed and constitutes protected curtilage within the meaning of the Fourth Amendment to the United States Constitution. See Florida v. Jardines, 569 U.S. 1 (2013).

17. Without a warrant, without the consent of the property owner or any resident of 365 Park Way Street, and without any recognized exception to the warrant requirement, Defendant Castilleja entered through the outer gate of the private backyard and positioned himself at the inner gate, peering over it into the property. No exigent circumstances existed: no crime was actively occurring in the officers' presence, no victim was identified on the property, and no suspect had been connected to the address at 365 Park Way.

18. Plaintiff became aware of Defendant Castilleja when he observed Castilleja's eyes peering at him from beyond the inner gate. Plaintiff had not been informed of any police presence, had not consented to any search or entry, and had not been notified that he was the subject of any investigation.

19. Defendant Castilleja ordered Plaintiff to come to the front of the property. When Plaintiff asked what the basis for this request was, Castilleja radioed to Defendants Hartless and Massey that he had "two out back." At no point did Castilleja articulate to Plaintiff that he was suspected of any specific crime, that he was being detained, or that he was under arrest.

20. When Plaintiff asked why Castilleja needed his name, Castilleja expressed agitation and grabbed Plaintiff's arm without first announcing a detention, without articulating any specific criminal suspicion, and without giving Plaintiff any opportunity to voluntarily comply. This physical seizure constituted an unlawful seizure under the Fourth Amendment, as no reasonable articulable suspicion existed at the time of initial contact linking Plaintiff to any criminal offense. Terry v. Ohio, 392 U.S. 1 (1968); ORS 131.615.

21. Defendants Hartless and Massey then entered the backyard and joined Defendant Castilleja in physically restraining Plaintiff. Multiple officers simultaneously applied physical force to Plaintiff, including a joint manipulation hold applied to Plaintiff's arm, which Plaintiff described as an attempt to break his arm. Plaintiff instinctively straightened and pulled his arm to prevent injury — a natural and foreseeable act of self-preservation against force that was itself unlawful.

22. Because Plaintiff would not submit to the joint manipulation hold, Defendant Castilleja directed the other officers to take Plaintiff to the ground. Multiple officers then fell on top of Plaintiff, driving him onto the wooden deck surface, landing on Plaintiff's back and pinning him to the ground. During this time, Plaintiff's left arm was pinned beneath his body. Rather than pausing to allow Plaintiff to free his arm, officers continued applying pressure and jabbed Plaintiff in the ribs. Defendant Castilleja threatened to deploy a Taser on Plaintiff while he was on the ground and pinned.

23. At no point during the physical altercation did Defendants inform Plaintiff that he was under detention or arrest before initiating physical force. Defendants did not communicate any legal justification for their actions until after Plaintiff was in handcuffs.

24. Both female witnesses present — later identified as Kinderlynn Surratt and Alexis Warden — confirmed to officers on scene that no physical assault had occurred and that they were uninjured. No visible injuries were documented on either witness. Despite confirmation from the alleged victims that no crime had occurred, Defendants maintained Plaintiff in handcuffs.

25. Plaintiff's legally owned, lawfully carried, and duly holstered Taurus 9mm pistol was discovered only after Plaintiff was fully handcuffed and subdued. No firearms charges were

filed. The weapon was nonetheless seized and placed into evidence as "property receipt number 22251" — a seizure unsupported by any nexus to a charged offense and unsupported by any warrant.

26. During placement into the patrol vehicle, Defendant Castilleja closed the vehicle door on Plaintiff's foot and walked away, despite Plaintiff repeatedly calling out that the door had closed on his foot.

27. Plaintiff was transported to Columbia County Jail and charged with Disorderly Conduct II (ORS 166.025), Resisting Arrest (ORS 162.315), and Interfering with a Peace Officer (ORS 162.247). At arraignment, only the Resisting Arrest charge was presented. That charge was subsequently dismissed.

28. Multiple bystanders had informed Defendants during the incident that Plaintiff is a combat veteran with severe PTSD. Rather than de-escalating in response to this information, an officer responded sarcastically, minimizing Plaintiff's trauma and continuing to escalate the encounter.

29. The body camera footage from the October 13, 2025 incident materially contradicts the written police reports authored by Defendants. The footage shows Plaintiff standing calmly, hands visible, engaging in lawful protected speech by asking the basis for police contact — not the agitated, threatening posturing described in the officers' reports. The footage further shows officers initiating physical contact before communicating any detention.

30. Key admissions captured on body camera footage from October 13, 2025 include: (a) an officer's statement that no active investigation had yet begun at the time of Plaintiff's

seizure; (b) a statement to Plaintiff that he had "lost his rights"; (c) a statement that the reason Plaintiff was "assaulted" (taken to the ground) was that he "doesn't listen" — not because of any physical threat; and (d) use of the resisting charge as retroactive justification for the initial seizure.

## C. Incident Two — April 2, 2026: Retaliatory Arrest, Excessive Force, and False Imprisonment

31. Following the October 13, 2025 incident, Plaintiff actively litigated the criminal charges arising from that incident on a Pro Se basis, filing a Motion to Dismiss and Suppress Evidence, a Court Script for cross-examination of officers, and a Supplemental Evidence Summary documenting contradictions between body camera footage and police reports. These filings are constitutionally protected petitioning activity under the First Amendment.

32. On April 2, 2026 — less than six months after the October 13, 2025 incident, and while Plaintiff's Pro Se litigation arising from that incident was ongoing — Plaintiff was present as a customer inside the Walmart store located in St. Helens, Oregon.

33. While Plaintiff was engaged in a lawful phone call heading inside the store, an individual grabbed Plaintiff from behind without any announcement of police presence, detention, or arrest. Plaintiff turned to identify who had grabbed him and discovered it was a St. Helens Police Department officer, subsequently identified as Defendant Officer Spratzle/Sprinkle.

34. Defendant Officer Spratzle/Sprinkle then pointed a Taser weapon directly at Plaintiff's face at close range. Plaintiff was not displaying any aggressive behavior, had not made any threatening movements, had not attempted to flee, and had not been told he was being detained or arrested. The Taser threat was so disproportionate and alarming that a civilian

bystander intervened by physically positioning herself between the officer and Plaintiff, vocally protesting the use of the weapon.

35. Defendants additionally threatened to release a police K9 on Plaintiff. Plaintiff had not fled, had not displayed any weapon, had not threatened any person, and had not been engaged in any observable criminal conduct. The K9 threat, like the Taser threat, was disproportionate, unprovoked, and unconstitutional under the Fourth Amendment.

36. Plaintiff was taken into custody. At no point was Plaintiff informed of the basis for his detention or arrest at the scene. Plaintiff directly asked Defendant Spratzle/Sprinkle what he was being charged with. The officer replied that Plaintiff "knows why" he is under arrest — a non-response that denied Plaintiff the notice constitutionally required for a lawful arrest.

37. During transport to Columbia County Jail, Plaintiff continued to challenge the basis for the arrest and the use of escalated force. Defendant Spratzle/Sprinkle then made the following explicit admissions: (a) that his use of escalated force during the April 2, 2026 encounter was justified by reference to the October 13, 2025 incident; and (b) that specifically, "last time you had a weapon on you" served as justification for Taser deployment on April 2, 2026. These statements were made in the patrol vehicle and may be captured on body camera audio.

38. This admission constitutes direct, on-the-record evidence of unconstitutional retaliatory and punitive pre-escalation. Force under the Fourth Amendment must be evaluated based on the circumstances existing at the moment force is applied — not on prior unrelated encounters. Graham v. Connor, 490 U.S. 386 (1989). An officer may not pre-escalate force

against a citizen based on prior lawful conduct, including the lawful carrying of a firearm. McDonald v. City of Chicago, 561 U.S. 742 (2010).

39. Plaintiff was booked into Columbia County Jail. The booking sheet and release paperwork generated in connection with the April 2, 2026 arrest contain no case number — indicating that no formal charging instrument was ever filed with any court in connection with this arrest.

40. Plaintiff was released and instructed to appear in court the following Monday. Upon appearing at the courthouse, Plaintiff was not on the court docket. Plaintiff proceeded to the District Attorney's office and was informed verbally by a DA's clerk that if they needed him for anything, they would send notice by mail. Witness Sara Diane Hoyt separately contacted the DA's office and was given the identical response.

41. To date, no charges have been formally filed arising from the April 2, 2026 arrest. This constitutes a favorable termination of the prosecution for purposes of Plaintiff's malicious prosecution claim under Thompson v. Clark, 596 U.S. 36 (2022).

42. Plaintiff suffered physical injury, severe emotional distress, and significant exacerbation of his service-connected PTSD as a result of both incidents. Plaintiff is seeking medical treatment.

## IV. CAUSES OF ACTION

### FIRST CAUSE OF ACTION
Violation of 42 U.S.C. § 1983 — Unlawful Warrantless Entry into Protected Curtilage
Fourth Amendment to the United States Constitution
(Against Defendant Castilleja and City of St. Helens)

43. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

44. The backyard of 365 Park Way Street, St. Helens, Oregon constitutes protected curtilage under the Fourth Amendment. Florida v. Jardines, 569 U.S. 1 (2013); United States v. Dunn, 480 U.S. 294 (1987).

45. Defendant Castilleja entered the curtilage of 365 Park Way Street without a warrant, without the consent of any resident or property owner, and without any applicable exception to the warrant requirement, including exigent circumstances. No crime was occurring in officers' presence; no identified suspect was connected to this property; the 911 caller had reported she could no longer see any incident.

46. This warrantless entry violated Plaintiff's clearly established Fourth Amendment rights and caused Plaintiff injury, including the unlawful seizure and use of force that followed directly and foreseeably from the unlawful entry.

## SECOND CAUSE OF ACTION

Violation of 42 U.S.C. § 1983 — Unlawful Seizure Without Reasonable Articulable Suspicion
Fourth Amendment to the United States Constitution
(Against Defendants Castilleja, Hartless, Massey, and City of St. Helens)

47. Plaintiff realleges and incorporates by reference all preceding paragraphs.

48. Under Terry v. Ohio, 392 U.S. 1 (1968), and its progeny, a law enforcement officer may not seize a person without reasonable articulable suspicion that the specific person has committed, is committing, or is about to commit a crime. ORS 131.615.

49. Defendants seized Plaintiff — a person who did not match the suspect description, who was calmly standing in a private backyard, and who had not been connected by any evidence to any crime — without any reasonable articulable suspicion. The seizure was effected before any investigation of the reported incident had been conducted, as admitted by the officers themselves on body camera.

50. This unlawful seizure violated Plaintiff's clearly established Fourth Amendment rights.

### THIRD CAUSE OF ACTION
Violation of 42 U.S.C. § 1983 — Excessive Force
Fourth Amendment to the United States Constitution
(Against Defendants Castilleja, Hartless, Massey, Spratzle/Sprinkle, and City of St. Helens)

51. Plaintiff realleges and incorporates by reference all preceding paragraphs.

52. The Fourth Amendment prohibits the use of excessive force during a seizure. Force must be "objectively reasonable" under the totality of the circumstances, considering the severity of the crime, the immediacy of the threat posed, and whether the subject is actively resisting or evading. Graham v. Connor, 490 U.S. 386 (1989).

53. On October 13, 2025, Defendants Castilleja, Hartless, and Massey applied excessive force against Plaintiff, including: a joint manipulation hold designed to force arm compliance; a multi-officer takedown onto a hard wooden deck surface; continued application of bodyweight pressure while Plaintiff's arm was pinned beneath him; jabbing Plaintiff in the ribs; and threatening Taser deployment on a pinned, restrained individual. This force was grossly disproportionate to the circumstances: no crime was occurring, no threat had been made, Plaintiff was not fleeing, Plaintiff was not armed at the time of contact, and force was initiated before detention was even announced.

54. On April 2, 2026, Defendant Spratzle/Sprinkle applied excessive force by pointing a Taser weapon directly at Plaintiff's face after grabbing Plaintiff without announcement and without any observable threat or aggression. The deployment of a Taser constitutes a significant use of force. Mattos v. Agarano, 661 F.3d 433 (9th Cir. 2011). Its threatened use against a non-threatening individual during a phone call, in a public retail store, is objectively unreasonable. Additionally, threatening K9 deployment under these same

circumstances constitutes an independent use of unreasonable force. Chew v. Gates, 27 F.3d 1432 (9th Cir. 1994).

55. Plaintiff suffered physical injury to his arm and shoulder, physical pain, emotional distress, and severe PTSD exacerbation as a result of Defendants' excessive force.

## FOURTH CAUSE OF ACTION

Violation of 42 U.S.C. § 1983 — False Arrest Without Probable Cause
Fourth Amendment to the United States Constitution
(Against All Individual Defendants and City of St. Helens)

56. Plaintiff realleges and incorporates by reference all preceding paragraphs.

57. The Fourth Amendment prohibits arrest without probable cause. An arrest predicated solely on resistance to an unlawful seizure cannot form the basis for a lawful arrest. Blankenhorn v. City of Orange, 485 F.3d 463 (9th Cir. 2007).

58. Plaintiff's October 13, 2025 arrest on charges of Resisting Arrest, Interfering with a Peace Officer, and Disorderly Conduct was unsupported by probable cause. The underlying seizure was unlawful; resistance to an unlawful seizure does not constitute criminal resistance. Plaintiff's speech — asking why officers needed his name — is constitutionally protected and cannot form the basis of a Disorderly Conduct charge. The charges were subsequently dismissed.

59. Plaintiff's April 2, 2026 arrest on charges including Burglary 1, Theft 1, Criminal Mischief 1, Criminal Conspiracy 1 (two counts), Resisting Arrest, and Escape was unsupported by probable cause. No formal charges were ever filed. No case number was assigned. Plaintiff was released and no prosecution was initiated.

## FIFTH CAUSE OF ACTION

Violation of 42 U.S.C. § 1983 — Malicious Prosecution
Fourth and Fourteenth Amendments to the United States Constitution

(Against Defendants Spratzle/Sprinkle, Castilleja, Hartless, and City of St. Helens)

60. Plaintiff realleges and incorporates by reference all preceding paragraphs.

61. A claim of malicious prosecution under § 1983 requires: (1) a criminal prosecution initiated or continued by the defendant; (2) without probable cause; (3) with malice; (4) that terminated in the plaintiff's favor; and (5) that caused damages. Thompson v. Clark, 596 U.S. 36 (2022).

62. Defendants initiated criminal proceedings against Plaintiff in both October 2025 and April 2026 without probable cause and with malice, as evidenced by the retaliatory admission made by Defendant Spratzle/Sprinkle during transport. Both sets of proceedings terminated in Plaintiff's favor — the October 2025 charges were dismissed and the April 2026 charges were never formally filed. Plaintiff suffered injury including incarceration, emotional distress, PTSD exacerbation, and reputational harm.

## SIXTH CAUSE OF ACTION

Violation of 42 U.S.C. § 1983 — First Amendment Retaliation
First and Fourth Amendments to the United States Constitution
(Against All Individual Defendants and City of St. Helens)

63. Plaintiff realleges and incorporates by reference all preceding paragraphs.

64. The First Amendment protects the right to verbally challenge police conduct, to assert one's constitutional rights, and to petition the government through litigation. Duran v. City of Douglas, 904 F.2d 1372 (9th Cir. 1990); Nieves v. Bartlett, 139 S. Ct. 1715 (2019).

65. On October 13, 2025, Plaintiff engaged in protected speech by asking "Why do you need my name?" and "For what?" — lawful verbal challenges to police conduct. Defendants reacted by physically seizing Plaintiff and charging him with Disorderly Conduct based substantially on this protected speech.

66. Plaintiff thereafter exercised his First Amendment right to petition by filing Pro Se legal motions, court scripts, and evidence summaries in his criminal case, publicly and formally documenting and challenging the officers' unconstitutional conduct.

67. Within six months of those protected filings, Defendants effectuated a second arrest of Plaintiff — with Defendant Spratzle/Sprinkle explicitly linking the April 2026 use of escalated force to the October 2025 encounter. This temporal proximity, combined with the explicit admission, supports a finding that the April 2026 arrest was retaliatory. Hartman v. Moore, 547 U.S. 250 (2006).

## SEVENTH CAUSE OF ACTION
Violation of 42 U.S.C. § 1983 — Pattern of Retaliatory and Punitive Pre-Escalated Force
Fourth and Fourteenth Amendments to the United States Constitution
(Against Defendant Spratzle/Sprinkle and City of St. Helens)

68. Plaintiff realleges and incorporates by reference all preceding paragraphs.

69. Defendant Spratzle/Sprinkle admitted during transport that his decision to deploy escalated force — pointing a Taser at Plaintiff's face — on April 2, 2026 was based not on Plaintiff's conduct on that date but on the prior October 13, 2025 encounter, specifically stating "last time you had a weapon on you."

70. This constitutes punishment for prior lawful conduct — the lawful carrying of a firearm — applied prospectively to a subsequent unrelated encounter. Such pre-escalation based on prior lawful conduct is unconstitutional, as force must be objectively reasonable under the circumstances present at the moment it is used. Graham v. Connor, 490 U.S. 386 (1989). An officer cannot convert a citizen's lawful prior conduct into a basis for heightened use of force in future encounters.

## EIGHTH CAUSE OF ACTION

Monell Municipal Liability — Policy, Practice, Custom, and Failure to Train
42 U.S.C. § 1983
(Against Defendant City of St. Helens)

71. Plaintiff realleges and incorporates by reference all preceding paragraphs.

72. Under Monell v. Department of Social Services, 436 U.S. 658 (1978), a municipality may be held liable under § 1983 when the constitutional violation results from an official policy, a widespread custom or practice, or a failure to train officers that amounts to deliberate indifference to the rights of citizens.

73. The City of St. Helens, through the St. Helens Police Department, maintained policies, customs, or practices that permitted or encouraged: warrantless entry into protected curtilage; seizure of individuals without reasonable articulable suspicion; use of force before announcing detention; failure to de-escalate when informed of a subject's disability; retaliatory arrests; and pre-escalation of force based on prior lawful conduct. These patterns are evidenced by the two incidents described herein, which occurred within six months of each other involving the same department and the same subject.

74. The City's failure to adequately train officers regarding: (a) the constitutional limits of curtilage entry; (b) de-escalation protocols for individuals with disclosed disabilities including PTSD; (c) the requirement of reasonable articulable suspicion before seizure; and (d) constitutional force standards — constitutes deliberate indifference to the known risk of constitutional violations against citizens. City of Canton v. Harris, 489 U.S. 378 (1989).

75. The City's failure to discipline, retrain, or take corrective action following the October 13, 2025 incident — which was internally reviewed and approved — constitutes ratification of the unconstitutional conduct and demonstrates a policy of deliberate indifference.

## NINTH CAUSE OF ACTION

Violation of Title II of the Americans with Disabilities Act
42 U.S.C. § 12132
(Against Defendant City of St. Helens)

76. Plaintiff realleges and incorporates by reference all preceding paragraphs.

77. Title II of the ADA provides that no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity. 42 U.S.C. § 12132.

78. Law enforcement activities, including arrest and use of force, constitute services and programs of a public entity subject to Title II. Sheehan v. City and County of San Francisco, 743 F.3d 1211 (9th Cir. 2014).

79. Plaintiff's service-connected PTSD diagnosis constitutes a disability under the ADA. Multiple bystanders informed Defendant officers during the October 13, 2025 incident that Plaintiff is a combat veteran with PTSD. Officers failed to make any reasonable accommodation for Plaintiff's disability, failed to de-escalate, and instead escalated the encounter in response to disability-related behavior, causing Plaintiff significant harm and exacerbating his disability.

## TENTH CAUSE OF ACTION

Civil Rights Conspiracy — 42 U.S.C. § 1985(3)
(Against All Individual Defendants)

80. Plaintiff realleges and incorporates by reference all preceding paragraphs.

81. 42 U.S.C. § 1985(3) prohibits conspiracies to deprive persons of the equal protection of the laws or of equal privileges and immunities.

82. Defendant officers, acting in concert, conspired to deprive Plaintiff of his constitutional rights through a coordinated pattern of unlawful entry, seizure, excessive force, false arrest, false imprisonment and retaliatory arrest across two incidents. The explicit admission by Defendant Spratzle/Sprinkle — connecting the April 2026 use of force directly to the October 2025 incident — supports an inference of coordinated retaliatory intent among SHPD officers. Discovery is expected to reveal additional communications and coordination among Defendants.

## V. DAMAGES

83. As a direct and proximate result of Defendants' unconstitutional and unlawful conduct, Plaintiff has suffered and continues to suffer the following injuries and damages:

a. Physical injury to Plaintiff's arm and shoulder sustained during the October 13, 2025 takedown, requiring medical treatment;

b. Physical pain and suffering arising from both incidents;

c. Severe emotional distress arising from both incidents;

d. Significant exacerbation of Plaintiff's service-connected PTSD, documented through VA medical records, resulting from both incidents — particularly the sudden grab from behind, Taser threat, K9 threat, and physical restraint;

e. False imprisonment and loss of liberty during both unlawful detentions;

f. Reputational harm arising from the public arrest and booking in both incidents;

g. Economic damages including lost wages, medical expenses, and costs associated with Pro Se litigation of the criminal charges;

h. Unlawful deprivation of lawfully owned personal property, specifically a Taurus 9mm pistol, ammunition, and pocketknife, seized without authority;

i. Punitive damages against the individual Defendants in their individual capacities, in an amount to be determined by the jury, for their reckless and malicious disregard of Plaintiff's clearly established constitutional rights; and

j. Attorney's fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable statute.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Eddie Lee Keoki Phillips respectfully requests that this Court:

1. Enter judgment in favor of Plaintiff and against all Defendants on all causes of action;

2. Award Plaintiff compensatory damages in an amount to be proven at trial;

3. Award Plaintiff punitive damages against the individual Defendants in their individual capacities in an amount sufficient to punish and deter the conduct described herein;

4. Order the City of St. Helens to implement constitutional policing reforms, including mandatory de-escalation training for individuals with disabilities including PTSD, mandatory bodycam activation and retention protocols, and mandatory probable cause review before arrest;

5. Order the return of or compensation for all personal property unlawfully seized from Plaintiff, including the Taurus 9mm pistol, ammunition, and pocketknife;

6. Award Plaintiff attorney's fees, costs, and expenses pursuant to 42 U.S.C. § 1988;

7. Award such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to the Seventh Amendment to the United States Constitution and Federal Rule of

Civil Procedure 38(b), Plaintiff hereby demands a trial by jury on all claims so triable.

Respectfully submitted,

Dated: May 12, 2026

**EDDIE LEE KEOKI PHILLIPS**
Plaintiff, Pro Se
4626 NE 118th Ave
Portland, Oregon 97220
Phone: (503) 490-0470
Email: phillips.eddie.58@gmail.com